AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

__SOUTHERN__ DISTRICT OF __FLORIDA__

UNITED STATES OF AMERICA

vs.

FOUREL CELESTIN,
          Defendant.          /

CRIMINAL COMPLAINT

CASE NUMBER: 04-2590-GARBER

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __1995 through January 2003__ in __Miami-Dade__ county, in the __Southern__ District of __Florida__, and elsewhere, the defendant did,

knowingly and intentionally conspire to import cocaine into the United States from a place outside thereof;

in violation of Title __21__ United States Code, Section(s) __963__

I further state that I am a __Special Agent of the Drug Enforcement Administration__ and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

FILED by ___ D.C.
MAG. SEC.
MAY 2 4 2004
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.   MIAMI

Continued on the attached sheet and made a part hereof:    |X| Yes  | | No

Signature of Complainant
NOBLE HARRISON
DRUG ENFORCEMENT ADMINISTRATION

Sworn to before me and subscribed in my presence,

5/24-04                                         at    Miami, Florida
Date                                                  City and State

BARRY L. GARBER, U.S. MAGISTRATE JUDGE
Name & Title of Judicial Officer                      Signature of Judicial Officer

3/8

## **AFFIDAVIT**

I, Noble Harrison, (hereinafter Affiant) a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, depose and state the following.

1.) I have been employed as a Special Agent with DEA for approximately nine years and have been assigned to the Miami Field Division since February 1999. While assigned to the Miami Field Division, I have participated in many investigations concerning the illegal importation, possession and distribution of controlled substances. I have been involved in the execution and planning of narcotics-related arrests. I have participated in coordinating the activities of cooperating witnesses who have provided reliable information and assistance resulting in searches/seizures, arrests and convictions and have received training in narcotics investigations and the enforcement of the Controlled Substances Act.

2.) The information contained in this affidavit is submitted for the purpose of supplying probable cause for the issuance of a criminal complaint against Fourel CELESTIN for violations of federal crimes, including Title 21, United States Code, Sections 963.

3.) I have personally participated in the investigation of the above offenses and as a result of this participation, as well as information provided to me by other DEA Agents, law enforcement personnel, and other individuals, I am familiar with this investigation. This affidavit sets forth only those facts that I believe are necessary to establish the requisite foundation for a warrant to arrest the individuals named above. As a result, it does not contain all the information known regarding this investigation.

4.) Fourel CELESTIN is a former Senator of ex-President Aristide's Famni Lavalas Party. CELESTIN represented the southeastern region of Haiti, including the city of Jacmel.

1

5.) The DEA has been conducting an ongoing investigation into the activities of drug traffickers who utilize Haiti as a transshipment point for sending and receiving controlled substances and the illegal proceeds received from the sale of these controlled substances. The investigation has in part utilized information provided to your affiant by five Confidential Sources, hereinafter CS1, CS2, CS3, CS4, and CS12. All five Confidential Sources have provided reliable and corroborated information regarding the activities of other drug traffickers. CS1 is a former Haitian drug trafficker who has pleaded guilty and has been sentenced for drug trafficking and money laundering charges filed in the Southern District of Florida. CS1 is currently cooperating with the United States in the hopes of a reduction in sentence. CS2 is a former Haitian Government official who has been charged in this case and is currently cooperating with the United States in the hopes of a reduction in sentence. CS2 has not yet been convicted or sentenced. CS3 is a former officer with the Haitian National Police (HNP) and has been providing information to law enforcement since April of 2003. CS3 has never been charged or convicted, but has been provided limited use immunity by the United States Attorney's Office for the Southern District of Florida. CS4 is also a former Haitian drug trafficker who has pleaded guilty and has already been sentenced for drug trafficking charges filed in the Southern District of Florida. CS4 is currently cooperating with the United States in hopes of a sentence reduction. CS12 is a former Haitian drug trafficker who has been providing information to law enforcement since approximately 2002. CS12 has never been charged or convicted.

6.) CS4 stated that from approximately 1995 to 2000, CS4 was actively involved in smuggling cocaine into the United States. CS4 further stated that during that time, CS4 made several payments to CELESTIN as protection money for CS4's drug

2

trafficking activities. These payments ranged from $50,000 (U.S. Currency) to $100,000 (U.S. currency). CS4 made these payments to CELESTIN because as the Senator from the Jacmel, Haiti area, CELESTIN exercised authority over all key governmental positions in that area. These governmental positions included, but were not limited to, the mayor and the police chief for the City of Jacmel. CS4 further stated that, since CELESTIN exercised authority over the local police, CS4 believed that CELESTIN controlled drug trafficking activities in the Jacmel area.

7.) CS4 stated that in approximately 1998, another drug trafficker contacted CS4 and requested CS4's assistance in transporting approximately 375 kilograms of cocaine to the United States. This trafficker related to CS4 that the cocaine was being stored at CELESTIN's residence in Jacmel and that 300 kilograms of the cocaine belonged to the trafficker and 75 kilograms belonged to CELESTIN. CS4 went to CELESTIN's residence, picked up the cocaine, and transported it to Cap Haitien, Haiti where it was loaded onto one of CS4's motor vessels. CS4 stated that the cocaine shipment was successfully smuggled to the United States and was subsequently delivered to CELESTIN's associate in Miami.

8.) CS1 stated that he paid CELESTIN and other government officials allowing CS1 to conduct drug business in Haiti. CS1 stated that although not directly related to any specific drug transaction that CS1 conducted, CS1 regularly paid CELESTIN between $10,000 (U.S. Currency) and $20,000 (U.S. Currency). CS1 further stated that other drug traffickers were paying off CELESTIN as well. On one occasion, CS1 stated that while at CELESTIN's residence, CS1 observed a known drug trafficker deliver an envelope containing what CS1 believed was a cash payment to CELESTIN. During a search of CS1's residence, HNP officials seized, among other items, CS1's

3

various personal contact lists that contained the names and telephone numbers of several individuals who were involved in drug trafficking. CELESTIN'S information was contained within those lists.

9.) According to CS2, in or around 2001, a small aircraft crashed in the vicinity of Gonaive, Haiti, off National Route 2. This plane was transporting a cocaine shipment from Colombia to Haiti. CS2 learned about the incident and spoke with some of the HNP officers who were there to assist in the off-loading of the cocaine shipment. According to CS2, one of the HNP officers who was involved in the off-loading of the cocaine told CS2 that the HNP officers off-loaded the cocaine, put it into several official vehicles, and transported the cocaine to CELESTIN's residence in Port-au-Prince. This HNP officer provided CS2 with a list of vehicles and associated license plate numbers that were at the off-loading site. CS2 then went to CELESTIN's residence and saw one of the vehicles that was used to transport the cocaine to the residence.

10.) According to CS2, in or around 2002, a go-fast boat transporting a cocaine shipment from Colombia to Haiti ran aground in the vicinity of the coast of Jacmel. The local HNP officers seized the cocaine and transported it to the residence of the Jacmel Police Chief on behalf of CELESTIN. When CS2 learned about the incident, CS2 went to CELESTIN and demanded money from CELESTIN for a share of the profit from the seized cocaine. CELESTIN eventually gave CS2 $10,000 (U.S. currency).

11.) On or about July 22, 2002, HNP officers assigned to the counter drug unit executed a search warrant at a well known drug trafficker's residence in Haiti. The HNP officials seized approximately 58 kilograms of cocaine from the residence. The drug trafficker, who was present at the time of the search, told the DEA agents who were at the scene, that CELESTIN had brought the seized cocaine to the drug trafficker's residence.

4

The drug trafficker also told the DEA agents that the HNP officers who were at the scene were threatening the drug trafficker and instructing him to not provide any information to DEA about the seized cocaine.

12.) CS1 stated that the drug trafficker referred to in paragraph 11 is a well-known drug trafficker who operates in the Jacmel area and smuggles cocaine shipments from Colombia to Haiti via go-fast boats. CS1 stated this drug trafficker stopped paying CELESTIN protection money and, as a result, the drug trafficker believed that CELESTIN was responsible for providing information to the police that resulted in the search of the drug trafficker's house.

13.) CS12 stated that CS12 and CELESTIN were friends and had been so for a significant period of time. CS12 also identified the same drug trafficker referred to in paragraph 11 above. CS12 stated that CS12, CELESTIN, and the drug trafficker would regularly meet at their residences. During these meetings, CS12 often observed the drug trafficker make cash payments to CELESTIN as security protection for the drug trafficker's drug trafficking activities. CS12 further stated that, from 2001 through 2002, CS12 purchased approximately 200 kilograms of cocaine from this drug trafficker.

14.) CS3 stated that in or about January 2003, HNP officers assigned to the counter drug unit arrested four Colombians suspected of being involved in drug trafficking in Haiti to pressure them for bribe money. According to CS3, CELESTIN paid CS2 and another HNP officer approximately $40,000 (U.S. currency) to have the Colombian suspects released.

Based upon the foregoing information, your affiant requests the issuance of a complaint charging Fourel CELESTIN with Conspiracy to Import Cocaine into the

5

United States From a Place Outside Thereof, in violation of Title 21, United States Code, Section 963, on the basis of the probable cause set forth in this affidavit.

FURTHER AFFIANT SAYETH NAUGHT

_____
NOBLE HARRISON
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Sworn to and subscribed
Before me this **27**
day of May 2004

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-2590-BLG

UNITED STATES OF AMERICA

vs.

FOUREL CELESTIN

Defendant.
_____/

FILED by _____ D.C.
MAG. SEC.

MAY 24 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.   MIAMI

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the United States Attorney's Office prior to April 1, 1999?  _X_ Yes  ___ No
   If yes, was it pending in the Central Region?
   ___ Yes ___ No

2. Did this matter originate from a matter pending in the United States Attorney's Office prior to April 1, 2003?  _X_ Yes  ___ No

3. Did this matter originate from a matter pending in the Narcotics Section (Miami) of the United States Attorney's Office prior to May 18, 2003?  _X_ Yes  ___ No

4. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  ___ Yes  _X_ No

Respectfully submitted,
MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

BY: _____
DAVID S. WEINSTEIN
ASSISTANT UNITED STATES ATTORNEY
Florida Bar Number 749214
99 N. E. 4th Street
Miami, Florida 33132-2111
TEL (305) 961-9159
FAX (305) 536-7213
E-mail Address:David.Weinstein@usdoj.gov